<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAMIAN MONTELEONE, an individual and on behalf of all others similarly situated, | Civil Action No. 14-801 (ES) (JAD) |
| Plaintiff | OPINION |
| v. | |
| THE NUTRO COMPANY, a Delaware corporation, et al., | |
| Defendants. | |

**SALAS, DISTRICT JUDGE**

Pending before the Court is the unopposed motion for attorneys' fees, expenses, and incentive award filed by Plaintiff on behalf of Plaintiff's Counsel ("Class Counsel"). (D.E. Nos. 37, 38). On December 7, 2015, the Court held oral argument on, among other things, Plaintiff's and Defendants' joint motion for final certification of settlement class and approval of class settlement, notice procedures, and plan of allocation, (D.E. No. 34), as well as the instant motion for attorneys' fees, expenses, and incentive award, (D.E No. 38). (*See* D.E. No. 39). The Court did not receive any objections. For the reasons stated herein, the Court GRANTS Plaintiff's motion for attorneys' fees, expenses, and incentive award.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This action arises out of a class action complaint that was filed in New Jersey state court. (*See* D.E. No. 1, Notice of Removal). Plaintiff alleges that Defendants The Nutro Company and MARS, Inc. made false representations that certain dog kibble and biscuit products (the "Class

1

Products") contained a healthy, digestive probiotic additive referred to as *Bacillus*.  (D.E. No. 38-1, Plaintiff's Amended Memorandum of Law in Support of Unopposed Motion, ("Pl. Mov. Br.") at 2).  According to Plaintiff, "this representation was false because *Bacillus* was essentially missing from the Class Products."  (*Id.*).

On August 4, 2015, the Court granted the joint motion for preliminary approval of class action settlement.  (D.E. No. 33).  On November 13, 2015, the parties filed a joint motion for final certification of settlement class and approval of class settlement, notice procedures, and plan of allocation (the "Class Settlement Motion").  (D.E. No. 34, Joint Motion).  The Class Settlement Motion discussed the settlement terms, which provided that Defendant will reserve up to $500,000 for a common fund to be distributed to individuals who purchased the Class Products during the relevant time period (the "Settlement Class Members").  (D.E. No. 34-1, Memorandum of Law in Support of Joint Motion at 5).  Settlement Class Members may elect to receive a single payment of $2.00 or a gift certificate for $5.00 towards the purchase of any Nutro product, or donate $5.00 worth of dry kibble to animal shelters.  (*Id.*).  In addition to the common fund, Defendants also agree to donate $500,000 worth of dry kibble to animal shelters.  (*Id.*).

On November 24, 2015, Plaintiff filed the instant unopposed motion for attorneys' fees, expenses, and incentive award on behalf of Class Counsel.  (D.E. No. 38).  Class Counsel is seeking $370,000 in attorneys' fees and expenses incurred by Gordon Rees Scully Mansukhani LLP and Del Mar Law Group, LLP (Pl. Mov. Br. at 2, 9).  Class Counsel is also seeking an incentive award of $5,000 for Plaintiff Damian Monteleone in his capacity as class representative. (*Id.*).

On December 7, 2015, the Court held a fairness hearing on the parties' Class Settlement Motion.  (*See* D.E. No. 39).  Based on the Class Settlement Motion and the arguments placed on

the record during the fairness hearing, the Court concluded that class certification was warranted, and approved final certification of the class under Federal Rule of Civil Procedure 23. (*See id.*). The Court also concluded that the proposed settlement was fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e). As such, the Court approved the class settlement. (*See id.*).

The Court did, however, reserve ruling on Class Counsel's requested attorneys' fees, expenses, and incentive award. The Court directed the parties to submit supplemental briefing addressing whether the Court could consider the $500,000 charitable donation—the *cy pres* award—as an aggregate portion of the settlement for the purposes of determining attorneys' fees.[1] The Court also ordered Class Counsel to submit billing records for an *in camera* review.

## II.   DISCUSSION

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." It further provides, in relevant part, that the following procedures apply:

> (1)   A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.
>
> (2)   A class member, or a party from whom payment is sought, may object to the motion.
>
> (3)   The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).

---

[1] Based on the parties' joint submission, (D.E. No. 40), the Court is satisfied that it may consider the *cy pres* award in the normal course, and that it need not give any special attention to the *cy pres* award—particularly when adopting the lodestar method, as discussed below.

**A.     Attorneys' Fees**

The District Court abuses its discretion in awarding attorneys' fees if it fails to: apply the proper legal standard; follow proper procedures in making its determination; or base an award upon findings of fact that are clearly erroneous. *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 727 (3d Cir. 2001); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301-02 (3d Cir. 2005) ("Notwithstanding our deferential standard of review of fee determinations, we have required district courts to clearly set forth their reasoning for fee awards so that we will have a sufficient basis to review for abuse of discretion. . . . [W]e remind the trial courts to engage in robust assessments of the fee award reasonableness factors when evaluating a fee request."). So, "[i]n a class action settlement, the court must thoroughly analyze an application for attorneys' fees, even where the parties have consented to the fee award." *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 248 (D.N.J. 2005) (citing *In re General Motors Corp.*, 55 F.3d 768, 820 (3d Cir. 1995)).

*1.     Assessing Requested Fee*

"Attorneys' fees requests are generally assessed under one of two methods: the percentage-of-recovery ('POR') approach or the lodestar scheme." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 330 (3d Cir. 2011). The POR method is favored in cases involving a common fund, and is designed to allow courts to award fees from the fund "in a manner that rewards counsel for success and penalizes it for failure." *In re General Motors*, 55 F.3d at 821. The lodestar method is commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a POR method would provide inadequate compensation. *Id.*

The lodestar method is the appropriate method in the instant case. Class Counsel asserts claims under the New Jersey Consumer Fraud Act, which contains a statutory fee-shifting provision. *See* N.J.S.A. 56:8-19 ("In all actions under this section the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit."). Moreover, the Settlement would not be depleted based on the amount of attorneys' fees. Rather, attorneys' fees, costs and expenses, and the incentive award will be dispersed separately from the Settlement and will not reduce the Settlement Class Members' recovery. (Pl. Mov. Br. at 6, 15). For these reasons, the Court concludes that the lodestar method is applicable. *See Weber v. Gov't Employees Ins. Co.*, 262 F.R.D. 431, 449-50 (D.N.J. 2009) (concluding that the lodestar method was proper in a New Jersey Consumer Fraud Act class action given the fee-shifting provision and where the award of attorneys' fee would not affect the settlement).

"A court determines the lodestar by multiplying the number of hours counsel reasonably worked on a client's case by a reasonable hourly billing rate for such services in a given geographical area provided by a lawyer of comparable experience." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 199 (3d Cir. 2000). "The reasonable attorney rate is determined by reference to the marketplace." *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 157 (D.N.J. 2013).

Based upon their usual billing rates, Class Counsel calculated a combined lodestar amount of $384,928: (1) 358.3 hours expended by Gordon Rees Scully Mansukhani LLP for a total lodestar of $187,387.50; and (2) 466.3 hours expended by Del Mar Group, LLP for a total lodestar of $197,540.50. (Pl. Mov. Br. at 8-9). Billing rates for both firms are outlined in the Declaration of John H. Donboli. (*See* D.E. No. 38-2). Class Counsel did not submit blended rates. The lodestar amount does not include any billable time after November 13, 2015. (Pl. Mov. Br. at 9 n.5).

The Court concludes that Class Counsel's lodestar calculation is appropriate. First, Class Counsel expended a reasonable amount of time working on the instant nationwide class action. Second, the Court concludes that Class Counsel's billing rates are reasonable for their respective geographic areas in comparable cases. Billing rates for Gordon Rees Scully Mansukhani LLP—which is located in New Jersey—are as follows: $595 for senior partners; $550 for partners; $425 for associates; and $325 for paralegals. (D.E. No. 38-2, Declaration of John H. Donboli at 2). When considering these billing rates, a blended (or average) rate would amount to approximately $473. Billing rates for Del Mar Law Group, LLP—which is located in California—are as follows: $495 for senior partners; $425 for partners; $375 for associates; and $325 for paralegals. (*Id.*). When considering these billing rates, a blended (or average) rate would amount to approximately $405. These rates—both the rates charged and the Court's calculated blended rates—fall within ranges approved by other courts in similar geographic areas for comparable cases. *See In re Mercedes-Benz Tele Aid Contract Litig.*, No. 07-2720, 2011 WL 4020862, at *7 (D.N.J. Sept. 9, 2011) (approving hourly rates ranging from $500 to $855 for partners and $265 to $445 for associates in a complex class action litigation based on similar cases in other metropolitan areas); *Chaikin v. Lululemon USA Inc.*, No. 12-02481, 2014 WL 1245461, at *6 (S.D. Cal. Mar. 17, 2014) (approving hourly rates ranging from $350 to $650 for a commercial class action litigation based upon hourly rates approved by California state and federal courts).

Thus, when multiplying Class Counsel's hours by their billing rates, the proposed lodestar amount of $384,928 is appropriate. Moreover, multiplying Class Counsel's blended billing rate by the hours expended yields a lodestar amount of $358,327.40.

After determining the lodestar, the Court should divide the fee request by the lodestar to arrive at a multiplier. *See In re Rite Aid*, 396 F.3d at 305-06; *In re Schering-Plough Corp. Enhance*

*Sec. Litig.*, No. 08-2177, 2013 WL 5505744, at *33 (D.N.J. Oct. 1, 2013).  "In performing the lodestar cross-check, the district courts should apply blended billing rates that approximate the fee structure of all the attorneys who worked on the matter." *In re Rite Aid*, 396 F.3d at 306.

Notably, "[t]he lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation . . . with an eye toward reducing the award." *Id.*  To be sure, "[e]ven when used as a cross-check, courts should 'explain how the application of a multiplier is justified by the facts of a particular case.'"  *Id.* (quoting *In re Prudential*, 148 F.3d at 340-41).  Finally, in using the lodestar cross-check, "the district court may rely on summaries submitted by counsel and need not review billing records."  *In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744, at *33.

Here, Class Counsel submits that the total number of hours expended by attorneys and paraprofessionals involved in this case is 824.6 hours. (Pl. Mov. Br. at 9).  As previously stated, Class Counsel did not submit a blended billing rate.  Rather, Class Counsel submitted invoices indicating that the attorneys and professionals billed at their normal rates, for a total lodestar of $384,928.  (*Id.*).  Class Counsel seeks $370,000 in fees.  (*Id.*).  Dividing $370,000 by $384,928 yields a multiplier of 0.96.  As to Class Counsel's blended rates—calculated by the Court—dividing $370,000 by $358,327.40 yields a multiplier of 1.03.

The Court concludes that the lodestar amounts of $384,928 and $358,327.40 and multipliers of .96 and 1.03 are reasonable and appropriate.  First, the lack of objections to the rates and requested fee counsels heavily in favor of reasonableness.  Moreover, after review of Class Counsel's *in camera* billing invoices, the Court is satisfied that the submitted number of 824.6 hours is accurate—minus a few hours entries that can be seen as unnecessary overlap between the two firms.  Finally, the Court concludes that the multiplier of .96 and 1.03 are more than reasonable

7

in light of case precedent. *See In re Cendant*, 243 F.3d at 742 (stating that "[m]ultipliers ranging from one to four are frequently awarded."). Accordingly, the Court concludes that lodestar amount and cross-check counsel in favor of approving the requested fee.

> 2.   *Reasonableness*

When reviewing attorneys' fees in class action settlements, district courts should consider the factors outlined in *Gunter v. Ridgewood Energy Corp*, 223 F.3d 190 (3d Cir. 2000) and *In re Prudential Ins. Co.*, 148 F.3d 283 (3d Cir. 1998). *See In re AT&T Corp.*, 455 F.3d 160, 166 (3d Cir. 2006). District courts should also utilize any other factors that are useful and relevant to the particular facts of the case. *Id.* The reasonableness factors "need not be applied in a formulaic way . . . and in certain cases, one factor may outweigh the rest." *In re Rite Aid*, 396 F.3d at 301 (quoting *Gunter*, 223 F.3d at 195 n.1).

The *Gunter* factors are as follows:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of a substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*In re Rite Aid*, 396 F.3d at 301. In addition, the Court should also consider the following *Prudential* factors:

> (1) the value of benefits attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations, . . . (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, . . . and (3) any innovative terms of settlement.

*In re AT&T Corp.*, 455 F.3d at 165.

> The Court will consider the factors in turn.

8

> *a.* <u>*Case Specific Considerations*</u>

As an initial matter, the Court notes that the lodestar amount in the instant case is $384,928. However, Class Counsel is only seeking $370,000 in attorneys' fees, as negotiated amongst the parties. The Court concludes that the requested amount below the lodestar weighs in favor of reasonableness. *See Weber*, 262 F.R.D. at 450 (noting that the amount of attorneys' fees requested was lower than the lodestar figure).

> *b.* <u>*The size of the fund created and the number of beneficiaries*</u>

The Settlement obtained in this action is $1,000,000. (Pl. Mov. Br. at 10). Pursuant to the terms of the Settlement, $500,000 will be distributed to eligible Settlement Class Members who purchased the Class Products during the relevant time period. (*Id.* at 3). The remaining $500,000 will be donated to animal shelters in the form of dry dog kibble. (*Id.*). The claims administrator received 29,947 claims, from which 26,419 were eligible to receive reimbursement in the form of a $2.00 check, $5.00 gift certificate, or a $5.00 donation. (*Id.* at 4). Of the 29,947 claims submitted, there were only three opt-outs, none of whom expressed dissatisfaction with the terms of the Settlement. (*Id.*). Furthermore, there were no objections to the Settlement. (*Id.*). Given the large size of the fund and number of potential beneficiaries, the Court finds that this factor weighs in favor of approving the requested fee.

> *c.* <u>*The presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel*</u>

Again, out of the 29,947 claims that the claims administrator received, 26,419 were eligible to receive compensation under the Settlement. (*Id.* at 4). Of the 29,947 claims received, there were only three opt-outs—none of whom expressed objections to the Settlement. (*Id.* at 11). Moreover, there are no objectors to the Settlement. "The absence of large numbers of objections mitigates against reducing fee awards." *In re Cendant Corp., Derivative Action Litig.*, 232 F.

9

Supp. 2d 327, 337 (D.N.J. 2002). Thus, given the complete absence of objections to the Settlement, the Court concludes that this factor weighs in favor of approving the requested fee.

### d. *The skill and efficiency of the attorneys involved*

To determine the skill and efficiency of the attorneys involved, courts have looked to "the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000).

Here, the Court concludes that this factor weighs in favor of the requested fee. Fairly early on in the case, the parties recognized the benefit of mediation, which they attended before the Honorable Mark B. Epstein (Ret.). (Pl. Mov. Br. at 8). Although mediation was unsuccessful, Class Counsel continued settlement discussions with defense counsel. (*Id.*). The parties were ultimately able to reach a settlement in an efficient timeframe. (*Id.*). Moreover, there is no reason to believe that Class Counsel is anything but experienced and skilled—particularly given their involvement in a very similar action in the State of California. Accordingly, the Court concludes that this factor weighs in favor of approving the requested fee.

### e. *The complexity and duration of the litigation*

The Court concludes that this factor neither weighs in favor of nor against the fee. Indeed, the instant case was removed to the District Court on February 7, 2014. (D.E. No. 1). By September 2014, the parties had reached a settlement agreement in principle, and executed a final settlement agreement on December 17, 2014. (Pl. Mov. Br. at 5). Thus, the duration of the litigation was less than a year. Although this timeframe speaks to the efficiency of Class Counsel, it does not speak favorably to the duration of the litigation.

Nevertheless, this was a complex litigation. Indeed, this was a nation-wide class action litigation. The Court concludes that duration and complexity balance each other out. Accordingly, this factor neither weighs in favor nor against the requested fee.

### f. *The risk of nonpayment*

Class Counsel contends that the risk of nonpayment was high in the instant case given the strength of Defense counsel. (Pl. Mov. Br. at 12). This is particularly true given that Class Counsel accepted the case on a contingency basis. (*See id.* at 9 ("billed over 824.6 *contingency* fee hours on this case.")). In any event, the Court also recognizes the importance of encouraging attorneys to take on complex class action litigation, and does not wish to deter attorneys from doing so. Accordingly, the Court concludes that this factor weighs in favor of the requested fee.

### g. *The amount of time devoted to the case by Class Counsel*

Collectively, Class Counsel dedicated over 824.6 hours to this case. (*Id.*). The Court has confirmed this figure by Class Counsel's *in camera* submission, which includes separate time entries from Del Mar Law Group, LLP and Gordon & Rees, LLP. The Court's *in camera* review did reveal duplicate or overlapping time entries. Nevertheless, Class Counsel is not requesting fees for the total 824.6 hours. Indeed, Class Counsel billed a total of $384,928 for the 824.6 hours, but is only requesting $370,000. (*Id.* at 8). The lower requested fee would account for any removal of billable time that overlapped between the two firms.

The Court concludes that 824.6 hours is reasonable for a nationwide class action—with the exception for California—that reached the motion to dismiss stage, entered mediation, and was ultimately settled by the parties. Accordingly, this factor weighs in favor of approving the requested fee.

### h. *The awards in similar cases*

This factor asks the Court to look at awards in similar cases when assessing the reasonableness of a fee request. *See Gunter*, 223 F.3d at 195 n.1. "This factor is addressed in two ways: a court (1) compares the actual award requested to other awards in comparable settlements; and (2) ensures that the award is consistent with what an attorney would have likely received if the fee was negotiated on the open market." *Rowe*, 2011 WL 3837106, at *21 (citation and quotation marks omitted).

Class Counsel did not address this factor. Thus, the Court concludes that this factor is not determinative.

### i. *Benefits to eligible members attributable to Class Counsel*

The Court concludes that this factor weighs in favor of approving the requested fee. The benefits Settlement Class Members will receive is directly attributable to the efforts of Class Counsel, rather than some other agency. Indeed, Class Counsel engaged in mediation with Defendants, and continued settlement negotiations following unsuccessful mediation. There is no indication that any government investigation was underway or imminent. Accordingly, the Court concludes that this factor weighs in favor of approving the requested fee.

### j. *Percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement*

This factor requires the Court to determine what the market would pay for the attorneys' efforts. *See In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liab. Litig.*, 553 F. Supp. 2d 442, 482 (E.D. Pa. 2008), *aff'd sub nom. In re Diet Drugs*, 582 F.3d 524 (3d Cir. 2009). Class Counsel did not address this factor. Nevertheless, Class Counsel billed their normal rates for this matter, and are requesting less than the amount billed. Accordingly, the Court concludes that this factor slightly weighs in favor of approving the requested fee.

Case 2:14-cv-00801-ES-JAD   Document 41   Filed 06/30/16   Page 13 of 14 PageID: 621

### k. *Innovative terms of settlement*

The final factor counsels in favor of approving the requested fee. The settlement terms in the instant case are highly innovative. The Settlement terms give Settlement Class Members multiple options—including options other than simply receiving money. Moreover, the Settlement also includes a large charitable donation. Importantly, the requested fee will not reduce the settlement fund available to the Settlement Class Members. Accordingly, the Court concludes that this factor weighs in favor of approving the requested fee.

Based on the above analysis, the Court grants Class Counsel's motion for attorneys' fees in the amount of $370,000.

### B. Costs

Class Counsel seeks $10,086.81 in costs—to be paid from the $370,000 requested fee. (Pl. Mov. Br. at 9). In a class action, counsel "is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001).

Here, Class Counsel submitted documentation of its expenses for *in camera* review. The Court has no reason to believe that the expenses were nothing more than "adequately documented and reasonably and appropriately incurred." *Id.* Accordingly, the Court approves reimbursement of the requested costs—to be paid out of the $370,000 requested fee.

### C. Incentive award

Finally, Class Counsel seeks a $5,000 incentive award for the named Plaintiff Damian Monteleone. (Pl. Mov. Br. at 15). There are no set factors to address when determining the amount of incentive awards. *Brady v. Air Line Pilots Ass'n*, 627 F. App'x 142, 146 (3d Cir. 2015).

Here, Plaintiff expended a significant amount of time litigating this action on behalf of the Class. (*Id.*). These efforts should not go unrecognized. Importantly, Class Counsel did not receive

objections to the incentive award, and it will not reduce the Settlement available to the Settlement Class Members. Accordingly, the Court approves the $5,000 incentive award to named Plaintiff.

### III. CONCLUSION

For the reasons stated above, the Court approves attorneys' fees in the amount of $370,000, expenses in the amount of $10,086.61, both to be paid from the $370,000, and $5,000 incentive award. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**